ARTHUR M. SIGNOR, JR., Plaintiff, *v.* ARTHUR M. SIGNOR, SR., and THE NATIONAL SURETY COMPANY, Defendants.

Supreme Court, Broome County, February, 1924.

Guardian and ward — embezzlement by guardian — guardian accountable and chargeable to infant — contract of reinsurance — failure of proof of notice to original surety company — guardian and successor surety company liable to infant.

A guardian who having deposited money received by him in settlement of the claim of his ward, who lost a leg in a railway accident, withdraws the money and invests it for his own use and benefit, is guilty not only of a violation of duty as trustee for his ward but also of a felony.

The ward's money shortly after the guardian had invested it in real estate for his own use and benefit was lost as the result of the guardian being adjudicated a bankrupt, and the ward upon attaining his majority brought the present action for an accounting against his guardian and the surety on his bond. *Held*, that the guardian was chargeable with and must account for the full amount received in settlement of the accident claim, less the sum paid for artificial legs purchased for plaintiff, with interest at the legal rate upon each item of money from the date of its appropriation. The sum per week which the guardian was by order of the court authorized to expend from the income for the maintenance, support and education of plaintiff will be allowed for during the time plaintiff lived at home with and was supported by his guardian and until he was employed by his guardian, who is his father, for wages.

While from letters and documents produced from the files of the surety company on the guardian's bond it was clear that some person connected with said company knew of the guardian's defaults and embezzlements prior to the making of a contract of reinsurance between said company and the surety company defendant herein, there was no proof that any written claim therefor was ever made to the original surety company. *Held*, that there was no known default, claim or loss upon the guardian's bond by any officer of the original surety company within the meaning of the contract of reinsurance, and that plaintiff was entitled to judgment against both defendants, with costs.

ACTION for an accounting.

*Arthur J. Ruland (Charles H. Burnett,* of counsel), for plaintiff.

*Mangan & Mangan,* for defendant Arthur M. Signor, Sr.

*Hinman, Howard & Kattell,* for defendant the National Surety Company.

RHODES, J. This action is brought by the plaintiff, Arthur M. Signor, Jr., as ward, against Arthur M. Signor, Sr., as guardian of the property, and the National Surety Company as surety on the bond of said guardian, the action being for an accounting.

It appears that the plaintiff, then a minor, was injured by the Erie Railroad Company in an accident as the result of which he lost a leg, and the railroad company paid to the guardian the sum of $5,500 in settlement, which was paid to the guardian on or about the 2d day of October, 1903. Shortly after this money was received by the guardian, he drew it from the banks where it had been deposited and invested it for his own use and benefit in certain real property, and shortly afterward became bankrupt, as the result of which the money in question was lost. This was not only a violation of his duty as trustee acting in a fiduciary capacity toward his ward, but was also a felony.

The guardian's only defense to this action is that he has paid back to his son, the plaintiff, at different times various amounts totaling more than the amount with which the guardian should be chargeable for money received.

The guardian, having commingled the trust funds with his own and appropriated them to his own use, should be and is chargeable with interest at the rate of six per cent from the date of such appropriation and commingling.

It is conceded by the plaintiff that the guardian should be allowed the sum of two hundred and fifty-one dollars and fifty-three cents for artificial legs purchased for the plaintiff, and the sum of forty-four dollars paid by the guardian as a premium on the guardian's bond, amounting in the aggregate to two hundred and ninety-five dollars and fifty-three cents. The guardian claims to have made other payments and advancements for the benefit of the plaintiff both before and after plaintiff arrived at the age of twenty-one years; that after the plaintiff arrived at his majority the defendant guardian stated to plaintiff that said guardian would make payments weekly or at stated intervals to apply on said account, and that thereafter the defendant guardian did make payments of money at stated intervals, usually in amounts of twenty dollars or twenty-five dollars weekly. Plaintiff denies any such arrangement and claims that whatever amounts were paid to him were paid to

him as salary and wages for work which he did for his father and guardian, the defendant above named.

No matter how much sympathy may be aroused by the distressing situation in which the guardian is placed, such condition of affairs is the result of the guardian's own acts, misconduct and slipshod method of handling the trust moneys, and he should not be heard to complain. If any payments out of the trust funds were proper or desirable to be made, the guardian could have protected himself by procuring an order of the court authorizing such payment, or at least the transaction might have been evidenced by receipts and writings showing with definiteness and certainty what the payments and disbursements were for. Nothing of the sort appears in the record herein and in case of doubt or uncertainty, all the payments being disputed, the doubt should be resolved against the guardian and he should be held to strict accountability.

I, therefore, hold that the guardian is chargeable and should account for the full amount of principal which he received, less the sum of $295.53, and is also chargeable with interest at six per cent upon each item of the moneys appropriated, from the date of such appropriation, and his claims for payments and offsets are rejected and disallowed except as to the said sum of $295.53, and excepting as to the sum of $5 per week which the guardian was, by the order appointing him, authorized to use out of the income for the maintenance, support and education of the plaintiff. I think the defendant should be permitted this allowance of $5 per week during the time plaintiff lived at home with and was supported by the defendant and until the time plaintiff was employed by the defendant for wages and salary, as claimed by plaintiff, such employment commencing in the fall of 1914 before plaintiff went on a trip to California.

The remaining question is as to the liability of the defendant surety company. When the guardian was appointed, the Empire State Surety Company became surety on his bond under seal. Later on the defendant, the National Surety Company, entered into a contract of reinsurance with the Empire State Surety Company by which the Empire State Surety Company transferred its outstanding unexpired surety and fidelity bonds, with certain others, to the defendant surety company, with the approval of the superintendent of insurance of the state of New York, said agreement being in writing under seal, and providing for such transfer upon certain conditions, one of such conditions being that the said defendant surety company thereby agreed to reinsure all the said unexpired surety and fidelity bonds and policies against burglary and theft " *for any default of the principals named in said bonds* * * *

*occurring after four o'clock P. M. of the 22nd day of August, 1912."*
The agreement further states by subdivision 3 thereof, " it being
the intention of this agreement that the National Surety Company
shall take the place of The Empire State Surety Company as to all
said unexpired bonds and .all said unexpired policies in all respects
with regard to all obligations therein and for loss thereunder, *on
which no written notice of claim was received by any of the officers of
The Empire State Surety Company,* located at its home office in
the City of New York, or in the Borough of Brooklyn, *and upon
which no written notice was received by any of its general agents, or
branch office managers, located at Albany, N. Y., Brooklyn, N. Y.,
* * * or upon which any written notice was given to any agent of
the said company prior to four o'clock P. M. on August 22, 1912."*

The schedule of bonds which were transferred by the Empire
State Surety Company to the said defendant, the National Surety
Company, included the bond of the defendant guardian in question.
The defendant surety company received from the Empire State
Surety Company, for the premium of reinsurance on said bond, the
sum of one dollar and forty-five cents, being the amount payable
therefor under said contract. The contract in question has been
construed by the courts in the case of *Escott* v. *National Surety Co.*,
219 N. Y. 613. In that case the administrator had misappropriated
and embezzled funds and evidence tended to show that the branch
office manager of the Empire State Surety Company of the city of
Buffalo knew of such default prior to the making of said contract of
reinsurance. The court held that as no written notice of claim was
received by any of the officers or branch office managers of the
Empire State Surety Company prior to the making of the reinsur-
ance contract, the bond there in question did not fall within
the exceptions of the letter or provisions of subdivision 3 of the
contract, and that, therefore, the reinsurer was liable. The court
also said: " The only other clause of the contract offering any
ground of defense is the 12th clause. By this clause the Empire
State Surety Company agreed that upon none of the bonds tendered
or to be tendered for reinsurance had any written notice of claim been
presented to the officers of the company, or to any of the branch
office managers, and further ' that there was no known default,
claim or loss, upon any of said bonds,' to any officers of the Empire
State Surety Company. The contract makes a clear distinction
between ' officers of the company ' and ' branch office managers.'
The ' known default ' specified is confined to defaults and losses
known by officers, rather than those by branch office managers. The
contract appears to be carefully drawn, and it was the apparent
purpose to guarantee the National Surety Company against losses

and defaults known to the officers of the Empire State Surety Company and against losses and defaults existing where written claim had been made either to the officers or branch office managers, but not to warrant against possible defaults and losses known to branch office managers, but not made known to the general officers. As to that class of defaults and losses the National Surety Company appears to have taken its chances *  *  *." The same situation seems to prevail in the case at bar. It is clear from letters and documents produced from the files of the Empire State Surety Company that some persons connected with the Empire State Surety Company knew of the guardian's defaults and embezzlements prior to the making of the contract of reinsurance, but there is no proof that any written claim therefor was ever made to the Empire State Surety Company.

The defendant surety company claims that the defaults and embezzlements of the defendant guardian were *known* to the *officers* of the Empire State Surety Company before the making of the contract of reinsurance. It does appear from the letters introduced in evidence in behalf of the defendant surety company that information as to the situation was furnished to some one connected with the Empire State Surety Company, but I am unable to find any proof, aside from surmise, that such information ever reached any of the *officers* of the Empire State Surety Company in order to make such defaults and embezzlements known to the officers within the meaning of the provisions of subdivision 12 of the contract. This is not a case where notice to an employee of the surety company would be held to be notice to the company itself. Here the notice to be given is expressly defined by the contract voluntarily agreed to by the defendant, and its terms are controlling on the defendant. The matter of knowledge and notice of the Empire State Surety Company is a matter of defense which has been pleaded by the defendant, but the proof introduced does not substantiate such defense.

I conclude, therefore, that there is no proof to establish that any written notice of claim was ever presented to any officer or agent of the Empire State Surety Company, and that there was no known default, claim or loss upon said bond by any officer of the Empire State Surety Company within the meaning of the terms of said contract.

Plaintiff should, therefore, have judgment against the defendants, with costs.

Judgment accordingly.